Janice G. Dubler, Esq.
Brandon R. Sher, Esq.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
(215) 995-2840
janice.dubler@ogletree.com
brandon.sher@ogletree.com
*Attorneys for Defendant TransForce, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHARON MADISON, | : | |
| | : | *Civil Action No. _____* |
| Plaintiff, | : | |
| | : | **NOTICE OF REMOVAL** |
| v. | : | |
| | : | |
| VELTRI, INC, TIM LEWIS, | : | |
| TRANSFORCE, INC., XYZ Corporations | : | |
| (1-10) fictitious and John Does 1-10 | : | |
| (fictitious) | : | |
| Defendants. | : | |
| | : | |
| | : | |

**TO:    CHIEF JUDGE AND JUDGES OF
        THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF NEW JERSEY**

**ON NOTICE TO:**

        Thomas L. Ferro, Esq.
        31 E. Ridgewood Avenue
        Ridgewood, NJ 07450
        thomasferro@optonline.net

**HONORABLE JUDGES:**

Defendant TransForce, Inc. ("TransForce" or Defendant") notices the removal of this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, *et seq.*, to the United States District Court for the District of New Jersey, and as grounds therefore shows as follows:

<u>**TIMELINESS OF REMOVAL AND CONSENT OF ALL PARTIES**</u>

1.      On or about February 2, 2021, Plaintiff Sharon Madison (hereinafter referred to as "Plaintiff") filed a civil action against Defendants Veltri, Inc., Tim Lewis, and TransForce, Inc. in the Superior Court of New Jersey, Hudson County, Law Division, entitled *Sharon Madison v. Veltri, Inc., et al.*, Docket No.: HUD-L-000461-21 (hereinafter referred to as "State Court Action").  A copy of the Summons, Complaint, Civil Case Information Statement, and Track Assignment Notice are attached hereto as Exhibit A.  These documents set forth the claims upon which Plaintiff's action is based and constitute all pleadings, process, and other documents served to date in this action.

2.      During a telephone discussion on May 28, 2021, counsel for Plaintiff and TransForce agreed that TransForce would accept a service copy of the Complaint and Summons. Later that day, Plaintiff's counsel sent a copy of same to counsel for TransForce.

3.      Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within 30 days after first service of the Summons and Complaint upon any defendant.

4.      Defendants Veltri, Inc. and Tim Lewis consent to the removal of this action.

5.      Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed.

<u>**BASIS FOR REMOVAL – DIVERSITY OF CITIZENSHIP**</u>

6.      This action is properly removable under 28 U.S.C. §1441 and 28 U.S.C. §1446 because the United States District Court has original jurisdiction in this case under 28 U.S.C. §

1332(a), which provides: "The district courts shall have original jurisdiction of all civil actions arising where the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between … citizen(s) of different states."

<b>Complete Diversity of Citizenship Exists Between Plaintiff<br>and the Properly Named Defendants</b>

7.      Plaintiff is a citizen of the State of New Jersey, and (according to her Complaint) resides in Hackensack, New Jersey.  (Compl., p. 1.)

8.      TransForce is not a citizen of the State of New Jersey.  It is a corporation organized under the laws of the State of Delaware with its principal place of business located in Virginia. TransForce is therefore a citizen of Delaware and Virginia within the meaning of 28 U.S.C. § 1332.

9.      Defendant Veltri, Inc. is not a citizen of the State of New Jersey.  It is a corporation organized under the laws of the Commonwealth of Pennsylvania and its principal place of business is also located in Pennsylvania.  Veltri is therefore a citizen of Pennsylvania within the meaning of 28 U.S.C. § 1332.

<b>Because Defendant Tim Lewis has been Fraudulently Joined,<br>the Court Must Disregard His Citizenship.</b>

10.      Although Defendant Tim Lewis is a citizens of the State of New Jersey, his citizenship must be disregarded under the fraudulent joinder doctrine.

11.      If a court determines that non-diverse defendants have been fraudulently joined, their citizenships must be disregarded and the action may be removed. *See Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009); *In re Briscoe*, 448 F.3d 201, 208 (3d Cir. 2006); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Joinder is deemed fraudulent "where there is no

reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer*, 913 F.2d at 111.

12.     Plaintiff attempts to hold Defendant Lewis individually liable under the New Jersey Law Against Discrimination ("LAD") because he allegedly participated in conduct that was gender-based, unwelcome, and constituted sexual harassment or gender-based harassment. (Complaint, ¶ 77).  This is the only claim in the Complaint directed at Defendant Lewis.

13.     Even accepting all of Plaintiff's allegations against Defendant Lewis as true, Defendant Lewis cannot be found liable to Plaintiff under the LAD as a matter of law. The only basis upon which an individual defendant may be held liable under the AD is under the LAD's aiding and abetting provision, N.J.S.A. 10:5-12(e). *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004).

14.     It is well-settled that non-supervisory employees cannot be held individually liable under the LAD.  *See Herman v. Coastal Corp.*, 348 N.J. Super. 1, 27-28 (App. Div. 2002), *certif. denied*, 174 N.J. 363 (2002); *Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 129 (3d Cir. 1999); *Ivan v. Cnty of Middlesex*, 595 F. Supp.2d 425, 462 (D.N.J. 2002); *Ross v. Amazon, Inc.*, 2019 WL 1227112, at *2 (D.N.J. Mar. 14, 2019) (holding the LAD "does not impose individual liability upon non-supervisory employees").

15.     Specifically, aiding and abetting liability under the LAD is limited to supervisors. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 2006 WL 3701499, at *4 (App. Div. 2006), *rev'd on other grounds*, 194 N.J. 563 (2008) ("An employee may only be held individually liable for acts of discrimination if he holds a supervisory position. And a nonsupervisory employee cannot be found liable as an aider and abettor for his or her own affirmative acts of harassment because such acts do not substantially assist the employer in its wrong, which is its failure to prevent and redress

4

harassment by individual employees."); *Hurley*, 174 F.3d at 129 ("[A] nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment"); *Dieng v. Computer Scient Corp.*, 2016 WL 885389, at *8 n.7 (D.N.J. Mar. 8, 2016) ("A review of both state and federal case law interpreting the … LAD's provision relating to aider and abettor liability makes clear that Defendants have the better argument. That is, non-supervisors of a plaintiff may not be liable for aiding and abetting under N.J.S.A. § 10:5-12(e)."); *Sussman v. Capital One, N.A.*, 2014 WL 5437079, at *6 (D.N.J. Oct. 24, 2014)*, aff'd*, 2015 WL 164095 (D.N.J. Jan. 13, 2015) ("The Third Circuit has predicted, and the New Jersey Superior Court's Appellate Division has held, that aiding and abetting liability under the NJLAD is limited to supervisors"); *Little v. Doe*, 2010 WL 3812364, at *5 (D.N.J. Sept. 28, 2010) (The "assertion of a claim of aiding and abetting against [a coworker] for her own wrongful conduct would be 'wholly insubstantial and frivolous."). Thus, Plaintiff's claims against Defendant Lewis are barred under the LAD and the inclusion of him as a Defendant constitutes fraudulent joinder.

16.     Plaintiff does not allege in the Complaint that Defendant Lewis was a supervisor or had supervisory duties.

17.     Instead, Plaintiff alleges that her usual supervisor was Joseph Mapp and at other times, her supervisor was either Santos Cruz or Vernon (last name unknown). (Compl., ¶¶ 8-9). Moreover, Veltri confirmed it did not employ Defendant Lewis as a supervisor.

18.     For all these reasons, this Court must apply the fraudulent joinder doctrine and disregard the citizenship of Defendant Lewis for purposes of diversity jurisdiction and removal, given that he is not a proper Defendant under the Third Circuit precedent cited above.

19.     Complete diversity of citizenship therefore exists, and this case is removable under 28 U.S.C. §1441(b).

<u>**Amount in Controversy Exceeds $75,000**</u>

20.     As explained below, the amount in controversy for Plaintiff exceeds the sum or value of $75,000.00, exclusive of interests and costs.

21.     In her Complaint, Plaintiff has not pled a specific amount of damages.  Instead, she seeks "actual and punitive damages, along with attorney's fees and litigation costs, as permitted by law." (Compl., p. 8.)

22.     Where, as here, a complaint is silent on the amount in controversy, removal is proper unless it is a legal certainty that the plaintiff cannot recover the jurisdictional amount of $75,000.  *See Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

23.     In this lawsuit, Plaintiff claims that Defendants discriminated against her in violation of the LAD because they subjected her to a hostile work environment and retaliated against her.

24.     Under the LAD, compensatory damages may include back pay, front pay, and emotional distress damages and, as such, the Court must consider each when determining whether the amount in controversy has been met. *See Reiff v. Convergent Techs*, 1995 WL 619944, at *4 (D.N.J. Oct. 20,1995) (holding the court must consider the plaintiff's claim for pain and suffering damages when determining whether the amount in controversy has been meet).

25.     As for her alleged lost wage damages (back pay and front pay), Plaintiff was terminated on April 25, 2020.  (Compl. at ¶ 72). *See Sussman v. Capital One, N.A.*, 2014 WL 5437079, at *4 (D.N.J. Oct. 24, 2014) ("The relevant time period for calculating an award of back pay begins with the date of the alleged wrongful termination and ends at the time of trial. Similarly, when calculating the front pay award, the jury must consider the expected future damages caused by a defendant's wrongful conduct from the date of judgment to retirement.") (citation omitted).

26.     In LAD cases, an award of emotional distress damages can be as high as several hundred thousand dollars. *See e.g.*, *Munoz v. City of Perth Amboy Police Dep't.*, 2009 WL 2244035 (App. Div. July 29, 2009) (*affirming* an award of $300,000 for emotional distress damages); *Mancini v. Twp. of Teaneck*, 349 N.J. Super. 527 (App. Div. 2002) (*affirming* awards of $500,000 and $125,000 for emotional distress damages). Even "garden variety emotional distress" awards (*i.e.*, those unsupported through psychiatric and/or psychological experts) are no longer nominal awards. These awards in New Jersey have been several hundreds of thousands of dollars. *See e.g.*, *Cuevas v. Wentworth Grp.*, 2014 WL 4494166 (App. Div. Sept. 15, 2014) (*affirming* awards of $800,000 and $600,000 for emotional distress damages), *affirmed*, 226 N.J. 480 (2016); *Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 345 (App. Div. 2012) (*affirming* an award of $405,000 for emotional distress damages); *Saffos v. Avaya*, 419 N.J. Super. 244, 258, 269 (App. Div. 2011) (*affirming* an award of $250,000 for emotional distress damages).

27.     Plaintiff is claiming entitlement to punitive damages. Because punitive damages are also recoverable in certain circumstances under the LAD, such damages must be considered in determining the amount in controversy. *See Frederico*, 507 F.3d at 199; *see also Zanger v. Bank of American, N.A.*, 2010 WL 3910142, at *3-*4 (D.N.J. Oct. 1, 2010) (holding that the amount in controversy was satisfied where a claim was only for approximately $16,000 in compensatory damages but punitive damages were also sought); *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 565 (D.N.J. 2009) ("The satisfaction of the amount in controversy requirement is even more likely when taking into account punitive damages sought by plaintiff.").

28.     Additionally, Plaintiff seeks attorneys' fees, which are also recoverable under the LAD, and, therefore, must be considered in determining the amount in controversy. *See Frederico*, 507 F.3d at 199; *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("attorneys'

fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.") As the Third Circuit found, "[f]ees could be as much as thirty percent of the judgment." *Id.*

29.    Accordingly, based on the allegations in the Complaint, the amount in controversy exceeds the sum of $75,000.00.

## CONCLUSION

30.    TransForce has not previously sought similar relief in this action.

31.    To date, TransForce has not filed a responsive pleading in Plaintiff's State Court Action, and no other proceedings have transpired in that action.

32.    In accordance with 28 U.S.C. §1446(d), copies of this Notice of Removal have been served upon Plaintiff and will be promptly filed with the Clerk of the Superior Court of New Jersey.

33.    By removing this matter, TransForce does not waive, or intend to waive, any defense including but not limited to, insufficiency of process and insufficiency of service of process.

34.    If any questions arise concerning the propriety of this removal, TransForce respectfully requests that it be allowed to file a brief supporting removal and be heard in oral argument.

**WHEREFORE**, TransForce respectfully requests that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of New Jersey, Hudson County, Law Division to the United States District Court for the District of New Jersey.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys for Defendant
TransForce, Inc.*

Date: June 3, 2021                    By: */s/ Janice G. Dubler*
                                          Janice G. Dubler

47297208.1

# EXHIBIT A

**THOMAS L. FERRO (289081973)**
**31 E. Ridgewood Avenue**
**Ridgewood, NJ 07450**
**(201) 694-9944 (cell)**
and 201-444-3000, ext. 4 (office)
thomasferro@optonline.net
Attorney for Plaintiff

_____

| | |
|---|---|
| SHARON MADISON, | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:  HUDSON COUNTY |
| Plaintiff | |
| v. | CIVIL ACTION |
| VELTRI, INC., a PA corporation, TIM LEWIS,<br>TRANSFORCE, INC., a NJ corporation, XYZ<br>Corporations (1- 10) fictitious and John Does<br>1-10 (fictitious), | DOCKET NO. HUD-L-000461-21 |
| Defendants | COMPLAINT AND JURY DEMAND |

_____

Sharon Madison, residing at 39 Euclid Avenue, Apt. 3C, Hackensack, NJ 07601-4550 [Bergen County], by way of complaint against defendants says:

### FIRST COUNT
#### (NJLAD – Hostile Environment)

1.    During the year 2020 and at all times relevant hereto, defendant, VELTRI, INC., [hereinafter, called "Veltri"] a Pennsylvania corporation founded in 1973, operated a trucking and delivery business and provided regional dedicated trucking services in Pennsylvania, New Jersey and other states.

2.    Veltri maintained a headquarters at 1961 Hartel Street, Levittown, PA 19057 and also maintained a truck parking and dispatch facility at 19 Hackensack Avenue, Kearny, NJ 07032.

3.    On or about Sunday, February 16, 2020, Veltri hired plaintiff to work as a truck driver.

4.   Plaintiff had been referred and assigned to that job via defendant, TRANSFORCE, INC., [hereinafter, referred to as "Transforce"] a New Jersey corporation doing business as an employment agency located at 180 Raritan Center Parkway (Suite 107), Edison, NJ 08837.

5.   Plaintiff's employment continued on a full-time basis after that date until it terminated on or about April 25, 2020.

6.   During the period from her hiring to her termination, plaintiff performed her job satisfactorily and frequently drove a truck full of mail from the United States Postal Service Mail Process Logistics Distribution Center at 1200 Harrison Avenue, Kearny, NJ 07032 to various other locations, pursuant to a contract that Veltri had with the US Postal Service.

7.   During her employment, plaintiff usually picked up her Veltri truck to drive from Veltri's truck storage and dispatch facility at 19 Hackensack Avenue, Kearny, NJ 07032.

8.   Plaintiff's usual Supervisor and management employee at Veltri was Joseph Mapp.

9.   At other times, her Supervisor and management employee at Veltri was either Santos Cruz [hereinafter, "Santos"] or Vernon _____ (last name unknown).

10.   There was another of Veltri's truck drivers named Tim Lewis [hereinafter, "Tim"] who also was an employee during plaintiff's tenure at Veltri.

11.   Tim Lewis is and was a New Jersey resident, believed to have been living at 226 Elmwood Avenue (Apt. 2), Maplewood, NJ 07040-1907 at all times relevant to this lawsuit.

12.   On plaintiff's first day of work, she was sitting in the driver's seat of the truck in Veltri's parking and dispatch center in Kearny, NJ, awaiting instructions from Mapp, when Tim came up to her truck and started banging on the door and then pulling on the door handle, after which he asked her in a very aggressive, rude, yelling tone of voice, "Your name is Sharon, isn't it?"

13.   Tim also said words to the effect of, "I'm telling you what to do. You have to take this trailer. Mapp told me to tell you where to go."

14.   As Tim yelled at Sharon, he continued to yank on the door handle and he called plaintiff, "Stupid!"

15.   Plaintiff began her truck driving assignment, and then about two hours later she texted her Supervisor, Joseph Mapp, complaining about Tim's conduct; but she did not receive a reply from Mapp that night.

16.   Within a few days, Mapp spoke to plaintiff about Tim's conduct and Mapp told her that he would talk to Tim about it.

17.   For about two weeks, there were no incidents with Tim.

18.   Then, on Wednesday, March 4, 2020, plaintiff reported for work, starting in Kearny, NJ.

19.   After receiving her job assignment to haul a load to Pennsylvania, she was driving her truck out of the parking/dispatch facility when Tim purposely walked in front of her truck near the exit driveway and made her stop.

20.   Tim said to plaintiff, "Where you going and what are you doing?"

21.   Plaintiff told him, "None of your business," after which Tim became loud and abusive and started banging on the driver's door where plaintiff was sitting.

22.   Meanwhile, Mapp who was on the scene in his pickup truck had observed what was going on and after what seemed to plaintiff like a long time, finally got out of his truck and spoke to plaintiff.

23.   Mapp told plaintiff, "Just go."

24.   Plaintiff replied to him that she wanted to put in a complaint to the company (Veltri) or the employment agency (Transforce) that furnished employees, including plaintiff, to Veltri.

25.  Mapp told her not to call the agency or put in a complaint----that he would take care of the problem with Tim.

26.  Mapp stated that the next day he would talk to Tim again and that he did not know why Tim kept coming up to plaintiff and saying things to her.

27.  Mapp told her again not to call the agency and to let him "take care of it."

28.  Tim stopped harassing plaintiff for about another two weeks.

29.  Then on or about Wednesday, March 18, 2020, plaintiff was in the driver's seat of her assigned tractor-trailer in the dispatch facility in Kearny, NJ when she saw Mapp sitting in his pickup truck talking to Tim.

30.  Then Tim walked over to plaintiff's truck and started banging on her door.

31.  Plaintiff tried to ignore Tim, but he kept banging on the door.

32.  Plaintiff rolled down the window and told him to get away from her.

33.  Shortly thereafter, plaintiff's back was leaning against the door, when Tim suddenly opened the door, causing plaintiff to almost fall out of the truck.

34.  Plaintiff then went over to Mapp, who was still sitting in his pickup truck, and tried to tell him what had happened, but Mapp would not roll down his window or talk to her.

35.  Plaintiff went back to her truck and Tim followed her, while Mapp watched, but did nothing.

36.  That's when Tim said to plaintiff, "You want to f--- me now, don't you?"

37.  Plaintiff stated, "Kiss my ass."

38.  Meanwhile, Mapp finally came over to plaintiff and she asked him if he wanted to know what had just happened----or take a statement from her.

39.  Mapp said, "No," after which plaintiff said to him, "Really?"

40.  Mapp then told her, "Just do the trip," as if nothing had happened.

41.  Plaintiff drove away, feeling frustrated, disrespected and angry.

42.  Seven days later----on March 25, 2020----plaintiff was at the dispatch facility and was bending over when Tim stared at her butt and stated to her, "You don't know what to do with all that."

43.  She found that to be very harassing.

44.  Two days later----on March 27, 2020----she was surprised to see no supervisors on duty that night----not Mapp and not Vernon.

45.  Plaintiff texted Mapp when she reported to the dispatch facility, hoping to follow up on what had previously happened, to tell him to order Tim to stop bothering her, and also to ascertain that she was on the right assignment.

46.  She received no reply or phone call from Mapp that day, after which she then spoke on the phone to another supervisor, Santos Cruz, following her texting him.

47.  She informed Santos that Tim was bothering her again, despite Mapp supposedly telling him to leave her alone.

48.  Tim started banging on the driver's door of the truck where plaintiff was sitting, and he also started using swear words and curse words toward her, calling her a "bitch."

49.  Santos told her he would be coming to the dispatch facility shortly.

50.  Santos did not come quickly enough and she had to get on the road to do her assignment.

51.  Six days later----on Thursday, April 2, 2020, Tim came up to plaintiff again at the dispatch facility and said to her, "I don't care if you look at me like that, you crazy bitch!"

52.  Plaintiff then asked Tim, "Who you calling a bitch?" to which he responded, "You."

53.   Plaintiff then called Mapp but did not reach him, so she left a voice mail complaining about Tim's conduct.

54.   She then called Santos but did not get him initially so she left a voice mail.

55.   Plaintiff left a message on Santos' voice mail as to what Tim had just done.

56.   Santos called her back and told plaintiff to calm down, after which he said he would send Mapp over to the facility.

57.   Mapp called her to ask what had happened, after which she told him.

58.   Plaintiff also told Mapp that the mechanic on the scene, Angel Bruno, had heard Tim say those words to her.

59.   She then put Bruno on the phone with Mapp and Bruno confirmed to Mapp what he had heard Tim say.

60.   Seven days later----on April 9, 2020, Santos asked plaintiff to see him at Door #2 of the dispatch facility.

61.   He then asked her, "What's going on with you and Tim?"

62.   Plaintiff told Santos that she does not know Tim, but he keeps bothering her, calling her a "bitch" and telling her he wants to "f---" her.

63.   Santos reacted by saying he thought that she knew Tim from previously.

64.   Santos did not offer to help her in any way and just brushed it off, as Mapp had done.

65.   Nothing significant happened during the next 12 days, as far as defendants doing something to remedy the gender-based harassment that plaintiff was receiving from Tim.

66.   Finally, on April 21, 2020, plaintiff was able to speak to Santos on the phone.

67.   Santos asked her to send him a statement as to what had happened.

68.   After that, Santos asked her to move her shift to a different time, so that she would not encounter Tim.

69.   Plaintiff told Santos that she should not have to change her shift----that the company should do something about Tim's conduct----and that she wanted to report these incidents with Tim as sexual harassment.

70.   Santos did not offer any reply or suggested remediation of the problem other than changing her shift and telling her he would obtain Tim's version of events.

71.   Santos also promised to have the Human Resources Director contact plaintiff, but she never heard from that person.

72.   A few days later, around April 25, 2020, defendant Veltri fired plaintiff rather than take any remedial action against Tim.

73.   After that, on April 29, 2020, plaintiff called the agency that had placed her in that job, defendant, Transforce, speaking to Jennifer Wheaton, the Human Resources Director.

74.   Transforce did nothing to try to save plaintiff's job or cause meaningful responsive action by Veltri..

75.   Instead, Oby, a supervisor at Transforce, told her that the job at Veltri was over, as if it had just timed out, instead of Veltri's unsatisfactory response of firing her in response to her legitimate complaints about Tim sexually harassing her.

76.   Transforce thereby aided and abetted the unlawful gender-based discrimination and retaliatory conduct perpetrated upon plaintiff by the other two defendants.

77.   Said conduct on the part of Veltri, Transforce and their employees, including Tim, was gender-based, unwelcome and constituted sexual harassment or gender-based harassment as those terms have been applied by New Jersey courts under the New Jersey Law against Discrimination.

78. Plaintiff ultimately got another job, but she suffered intense emotional anguish and has continued to suffer from emotional anguish from the events described.

79. The actions of defendants, Tim, Veltri and Transforce, were done with the participation and acquiescence of upper management, including Mapp and Santos of Veltri and Jennifer Wheaton and Oby of Transforce.

WHEREFORE, plaintiff demands judgment against defendants for actual and punitive damages, along with attorney's fees and litigation costs, as permitted by law.

## SECOND COUNT
### (NJLAD – Retaliation/Wrongful Discharge)

80. Plaintiff repeats the allegations of the previous count.

81. The conduct of defendants Veltri and Transforce in firing plaintiff right after she had complained about being sexually harassed was reprehensible, retaliatory, willful, intentional, reckless, gender-based, wrongful and discriminatory under the NJLAD and constituted wrongful discharge.

WHEREFORE, plaintiff demands judgment against defendants for actual and punitive damages, along with attorney's fees and litigation costs, as permitted by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c) and R. 4:25-4, Thomas L. Ferro, Esq. is hereby designated as trial counsel in this matter.

## CERTIFICATION OF ENTIRE CONTROVERSY

I hereby certify, pursuant to R. 4:5-1(b)(2), that this matter is not the subject of any other court or arbitration action to the best of my knowledge and no other such court or arbitration actions are contemplated.  There are no other parties who should be joined in this action.

## DEMAND FOR SURVEILLANCE VIDEOS and AUDIOTAPES

Demand is hereby made for defendant to furnish copies of all surveillance videos and audiotapes showing or recording plaintiff and/or Tim Lewis, or both in the same video or audio, during the period from February 16, 2020 through May 15, 2020.

## DEMAND FOR CERTAIN DOCUMENTS

Demand is hereby made for defendant to furnish copies of plaintiff's entire personnel file, as well as all documents (actual or digital) sent or received by any employees or management personnel concerning the topic of terminating plaintiff.

Demand is also made for the complete personnel file of defendant, Tim Lewis.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Demand is hereby made for each of the defendants to answer Q-1, Q-4, Q-5, Q-6, Q-7, Q-9, Q-10, Q-11, Q-12, Q-13, Q-14 and Q-15 of NJ Form C Interrogatories (the non-auto questions).

## PERSONAL IDENTIFIERS TO REMAIN CONFIDENTIAL

I certify and promise that no personal identifiers, such as Social Security numbers and Driver License numbers will be published in any pleadings now or in the future in this case.

February 2, 2021                          /s/      *Thomas L. Ferro*      .
                                                    THOMAS L. FERRO
                                                    Attorney for Plaintiff

**SUMMONS**

Attorney(s) <u>Thomas L. Ferro, Attorney at Law 289081973</u>

Office Address <u>31 East Ridgewood Avenue</u>

Town, State, Zip Code <u>Ridgewood, NJ 07450</u>

Telephone Number <u>201-694-9944</u>

Attorney(s) for Plaintiff <u>Sharon Madison</u>

**Superior Court of New Jersey**

Hudson ▾ County

Law Division

Docket No: <u>HUD-L-000461-21</u>

Plaintiff(s)

vs.

Veltri, Inc., a PA corporation, Tim Lewis

Transforce, Inc., a NJ corporation et al

Defendant(s)

**CIVIL ACTION SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED: <u>02/22/2021</u>

Name of Defendant to Be Served: <u>Transforce, Inc., a NJ corporation</u>

Address of Defendant to Be Served: <u>180 Raritan Center Parkway (Suite 107), Edison, NJ 08837</u>

# Civil Case Information Statement

**Case Details: HUDSON | Civil Part Docket# L-000461-21**

**Case Caption:** MADISON SHARON  VS VELTRI, INC.

**Case Initiation Date:** 02/02/2021

**Attorney Name:** THOMAS L FERRO

**Firm Name:** THOMAS L. FERRO

**Address:** 31 EAST RIDGEWOOD AVENUE
RIDGEWOOD NJ 07450

**Phone:** 2014443001

**Name of Party:** PLAINTIFF : Madison, Sharon

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Sharon Madison?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
There are no special case characteristics.

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/02/2021                                                                /s/ THOMAS L FERRO
Dated                                                                            Signed

```
HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY      NJ 07306
                              TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:  FEBRUARY 02, 2021
                    RE:    MADISON SHARON  VS VELTRI, INC.
                    DOCKET: HUD L -000461 21

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

    DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON MARY K. COSTELLO

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (201) 748-4400.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: THOMAS L. FERRO
                              THOMAS L. FERRO
                              31 EAST RIDGEWOOD AVENUE
                              RIDGEWOOD        NJ 07450


ECOURTS
```