HUD-L-000461-21   02/02/2021 5:10:54 PM   Pg 1 of 9 Trans ID: LCV2021248691

**THOMAS L. FERRO (289081973)**
**31 E. Ridgewood Avenue**
**Ridgewood, NJ 07450**
**(201) 694-9944 (cell)**
and 201-444-3000, ext. 4 (office)
thomasferro@optonline.net
**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

SHARON MADISON,

     Plaintiff        Civil Action No. 2:21-cv-12117

   v.

                Hon. John Michael Vazquez

VELTRI, INC., a PA corporation,
TRANSFORCE, INC., a DE corporation, XYZ
Corporations (1- 10) fictitious and John Does
1-10 (fictitious),

     Defendants     FIRST AMENDED COMPLAINT
                AND JURY DEMAND

_____

Sharon Madison, residing at 39 Euclid Avenue, Apt. 3C, Hackensack, NJ 07601-4550 [Bergen County], by way of complaint against defendants says:

**FIRST COUNT**
**(NJLAD – Hostile Environment)**

 1. During the year 2020 and at all times relevant hereto, defendant, VELTRI, INC., [hereinafter, called "Veltri"] a Pennsylvania corporation founded in 1973, operated a trucking and delivery business and provided regional dedicated trucking services in Pennsylvania, New Jersey and other states.

2.	Veltri maintained a headquarters at 1961 Hartel Street, Levittown, PA 19057 and also maintained a truck parking and dispatch facility at 19 Hackensack Avenue, Kearny, NJ 07032.

3.	On or about Sunday, February 16, 2020, defendant, Transforce, Inc. [hereinafter, referred to as "Transforce"] hired plaintiff to work as a truck driver assigned to Veltri.

4.	Plaintiff had been hired, referred and assigned to that job by "Transforce"] a Delaware corporation doing business in New Jersey and Virginia as an employment agency located at 180 Raritan Center Parkway (Suite 107), Edison, NJ 08837.

5.	Plaintiff's employment continued on a full-time basis after that date until it terminated on or about April 25, 2020.

6.	During the period from her hiring to her termination, plaintiff performed her job satisfactorily and frequently drove a truck full of mail from the United States Postal Service Mail Process Logistics Distribution Center at 1200 Harrison Avenue, Kearny, NJ 07032 to various other locations, pursuant to a contract that Veltri had with the US Postal Service.

7.	During her employment, plaintiff usually picked up her Veltri truck to drive from Veltri's truck storage and dispatch facility at 19 Hackensack Avenue, Kearny, NJ 07032.

8.	Plaintiff's usual Supervisor and management employee at Veltri was Joseph Mapp.

9.	At other times, her Supervisor and management employee at Veltri was either Santos Cruz [hereinafter, "Santos"] or Vernon _____ (last name unknown).

10.	There was another of Veltri's truck drivers named Tim Lewis [hereinafter, "Tim"] who also was an employee during plaintiff's tenure at Veltri.

11.	Tim Lewis is and was a New Jersey resident, believed to have been living at 1033 Sanford Avenue, Irvington, NJ 07111 at all times relevant to this lawsuit.

12. On plaintiff's first day of work, she was sitting in the driver's seat of the truck in Veltri's parking and dispatch center in Kearny, NJ, awaiting instructions from Mapp, when Tim came up to her truck and started banging on the door and then pulling on the door handle, after which he asked her in a very aggressive, rude, yelling tone of voice, "Your name is Sharon, isn't it?"

13. Tim also said words to the effect of, "I'm telling you what to do. You have to take this trailer. Mapp told me to tell you where to go."

14. As Tim yelled at Sharon, he continued to yank on the door handle and he called plaintiff, "Stupid!"

15. Plaintiff began her truck driving assignment, and then about two hours later she texted her Supervisor, Joseph Mapp, complaining about Tim's conduct; but she did not receive a reply from Mapp that night.

16. Within a few days, Mapp spoke to plaintiff about Tim's conduct and Mapp told her that he would talk to Tim about it.

17. For about two weeks, there were no incidents with Tim.

18. Then, on Wednesday, March 4, 2020, plaintiff reported for work, starting in Kearny, NJ.

19. After receiving her job assignment to haul a load to Pennsylvania, she was driving her truck out of the parking/dispatch facility when Tim purposely walked in front of her truck near the exit driveway and made her stop.

20. Tim said to plaintiff, "Where you going and what are you doing?"

21. Plaintiff told him, "None of your business," after which Tim became loud and abusive and started banging on the driver's door where plaintiff was sitting.

22. Meanwhile, Mapp who was on the scene in his pickup truck had observed what was going on and after what seemed to plaintiff like a long time, finally got out of his truck and spoke to plaintiff.

23. Mapp told plaintiff, "Just go."

24. Plaintiff replied to him that she wanted to put in a complaint to the company (Veltri) or the employment agency (Transforce) that furnished employees, including plaintiff, to Veltri.

25. Mapp told her not to call the agency or put in a complaint----that he would take care of the problem with Tim.

26. Mapp stated that the next day he would talk to Tim again and that he did not know why Tim kept coming up to plaintiff and saying things to her.

27. Mapp told her again not to call the agency and to let him "take care of it."

28. Tim stopped harassing plaintiff for about another two weeks.

29. Then on or about Wednesday, March 18, 2020, plaintiff was in the driver's seat of her assigned tractor-trailer in the dispatch facility in Kearny, NJ when she saw Mapp sitting in his pickup truck talking to Tim.

30. Then Tim walked over to plaintiff's truck and started banging on her door.

31. Plaintiff tried to ignore Tim, but he kept banging on the door.

32. Plaintiff rolled down the window and told him to get away from her.

33. Shortly thereafter, plaintiff's back was leaning against the door, when Tim suddenly opened the door, causing plaintiff to almost fall out of the truck.

34. Plaintiff then went over to Mapp, who was still sitting in his pickup truck, and tried to tell him what had happened, but Mapp would not roll down his window or talk to her.

35. Plaintiff went back to her truck and Tim followed her, while Mapp watched, but did nothing.

36. That's when Tim said to plaintiff, "You want to f--- me now, don't you?"

37. Plaintiff stated, "Kiss my ass."

38. Meanwhile, Mapp finally came over to plaintiff and she asked him if he wanted to know what had just happened----or take a statement from her.

39. Mapp said, "No," after which plaintiff said to him, "Really?"

40. Mapp then told her, "Just do the trip," as if nothing had happened.

41. Plaintiff drove away, feeling frustrated, disrespected and angry.

42. Seven days later----on March 25, 2020----plaintiff was at the dispatch facility and was bending over when Tim stared at her butt and stated to her, "You don't know what to do with all that."

43. She found that to be very harassing.

44. Two days later----on March 27, 2020----she was surprised to see no supervisors on duty that night----not Mapp and not Vernon.

45. Plaintiff texted Mapp when she reported to the dispatch facility, hoping to follow up on what had previously happened, to tell him to order Tim to stop bothering her, and also to ascertain that she was on the right assignment.

46. She received no reply or phone call from Mapp that day, after which she then spoke on the phone to another supervisor, Santos Cruz, following her texting him.

47. She informed Santos that Tim was bothering her again, despite Mapp supposedly telling him to leave her alone.

48. Tim started banging on the driver's door of the truck where plaintiff was sitting, and he also started using swear words and curse words toward her, calling her a "bitch."

49. Santos told her he would be coming to the dispatch facility shortly.

50. Santos did not come quickly enough and she had to get on the road to do her assignment.

51. Six days later----on Thursday, April 2, 2020, Tim came up to plaintiff again at the dispatch facility and said to her, "I don't care if you look at me like that, you crazy bitch!"

52. Plaintiff then asked Tim, "Who you calling a bitch?" to which he responded, "You."

53. Plaintiff then called Mapp but did not reach him, so she left a voice mail complaining about Tim's conduct.

54. She then called Santos but did not get him initially so she left a voice mail.

55. Plaintiff left a message on Santos' voice mail as to what Tim had just done.

56. Santos called her back and told plaintiff to calm down, after which he said he would send Mapp over to the facility.

57. Mapp called her to ask what had happened, after which she told him.

58. Plaintiff also told Mapp that the mechanic on the scene, Angel Bruno, had heard Tim say those words to her.

59. She then put Bruno on the phone with Mapp and Bruno confirmed to Mapp what he had heard Tim say.

60. Seven days later----on April 9, 2020, Santos asked plaintiff to see him at Door #2 of the dispatch facility.

61. He then asked her, "What's going on with you and Tim?"

62. Plaintiff told Santos that she does not know Tim, but he keeps bothering her, calling her a "bitch" and telling her he wants to "f---" her.

63. Santos reacted by saying he thought that she knew Tim from previously.

64. Santos did not offer to help her in any way and just brushed it off, as Mapp had done.

65. Nothing significant happened during the next 12 days, as far as defendants doing something to remedy the gender-based harassment that plaintiff was receiving from Tim.

66. Finally, on April 21, 2020, plaintiff was able to speak to Santos on the phone.

67. Santos asked her to send him a statement as to what had happened.

68. After that, Santos asked her to move her shift to a different time, so that she would not encounter Tim.

69. Plaintiff told Santos that she should not have to change her shift----that the company should do something about Tim's conduct----and that she wanted to report these incidents with Tim as sexual harassment.

70. Santos did not offer any reply or suggested remediation of the problem other than changing her shift and telling her he would obtain Tim's version of events.

71. Santos also promised to have the Human Resources Director contact plaintiff, but she never heard from that person.

72. A few days later, around April 25, 2020, defendant Veltri and Transforce fired plaintiff rather than take any remedial action against Tim.

73. After that, on April 29, 2020, plaintiff called the agency that had hired her and placed her in that job, defendant, Transforce, speaking to Jennifer Wheaton, the Human Resources Director.

74. Transforce did nothing to try to save plaintiff's job or cause meaningful responsive action by Veltri..

75. Instead, Oby, a supervisor at Transforce, told her that the job at Veltri was over, as if it had just timed out, instead of Veltri's unsatisfactory response of firing her in response to her legitimate complaints about Tim sexually harassing her.

76. Transforce thereby aided and abetted the unlawful gender-based discrimination and retaliatory conduct perpetrated upon plaintiff by Veltri and its employees. .

77. Said conduct on the part of Veltri, Transforce and their employees, including Tim, was gender-based, unwelcome and constituted sexual harassment or gender-based harassment as those terms have been applied by New Jersey courts under the New Jersey Law against Discrimination.

78. Plaintiff ultimately got another job, but she suffered intense emotional anguish and has continued to suffer from emotional anguish from the events described.

79. The actions of defendants, Tim, Veltri and Transforce, were done with the participation and acquiescence of upper management, including Mapp and Santos of Veltri and Jennifer Wheaton and Oby of Transforce.

WHEREFORE, plaintiff demands judgment against defendants for actual and punitive damages, along with attorney's fees and litigation costs, as permitted by law.

## SECOND COUNT
### (NJLAD – Retaliation/Wrongful Discharge)

80. Plaintiff repeats the allegations of the previous count.

81. The conduct of defendants Veltri and Transforce in firing plaintiff right after she had complained about being sexually harassed was reprehensible, retaliatory, willful, intentional, reckless, gender-based, wrongful and discriminatory under the NJLAD and constituted wrongful discharge.

WHEREFORE, plaintiff demands judgment against defendants for actual and punitive damages, along with attorney's fees and litigation costs, as permitted by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c) and R. 4:25-4, and RCP 11(a), Thomas L. Ferro, Esq. is hereby designated as trial counsel in this matter.

## CERTIFICATION OF ENTIRE CONTROVERSY

I hereby certify, pursuant to R. 4:5-1(b)(2), and Local Civil Rule 11.2, that this matter is not the subject of any other court or arbitration action to the best of my knowledge and no other such court or arbitration actions are contemplated.  There are no other parties who should be joined in this action.

## DEMAND FOR SURVEILLANCE VIDEOS and AUDIOTAPES

Demand is hereby made for both defendants to furnish copies of all surveillance videos and audiotapes showing or recording plaintiff and/or Tim Lewis, or both in the same video or audio, during the period from February 16, 2020 through May 15, 2020.

## DEMAND FOR CERTAIN DOCUMENTS

Demand is hereby made for both defendants to furnish copies of plaintiff's entire personnel file, as well as all documents (actual or digital) sent or received by any employees or management personnel of both companies concerning the topic of terminating plaintiff.

Demand is also made for the complete personnel file of defendant, Tim Lewis.

## **DEMAND FOR ANSWERS TO INTERROGATORIES**

Demand is hereby made for each of the defendants to answer Q-1, Q-4, Q-5, Q-6, Q-7, Q-9, Q-10, Q-11, Q-12, Q-13, Q-14 and Q-15 of NJ Form C Interrogatories (the non-auto questions).

## **PERSONAL IDENTIFIERS TO REMAIN CONFIDENTIAL**

I certify and promise that no personal identifiers, such as Social Security numbers and Driver License numbers will be published in any pleadings now or in the future in this case.

March 14, 2022                                                          /s/ *Thomas L. Ferro* .
                                                                                    THOMAS L. FERRO
                                                                                    Attorney for Plaintiff